| | |
|---|---|
| KELCO METALS, INC.,<br>an Illinois Corporation,       ) | |
|       ) | |
|       ) | |
|    **Plaintiff,**       ) | |
|       ) | **Case No. 09 C 4476** |
| **v.**       ) | |
|       ) | **Hon. Marvin E. Aspen** |
| **MICHAEL G. MORGAN,**       ) | |
| **a resident of the State of Tennessee, and**   ) | |
| **WESMAR STEEL CORPORATION,**    ) | |
| **a Tennessee corporation,**       ) | |
|       ) | |
|    **Defendants.**       ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MARVIN E. ASPEN, District Judge:

Plaintiff Kelco Metals, Inc. ("Kelco") filed in this court a ten-count complaint against Defendants Michael G. Morgan and Wesmar Steel Corporation ("Wesmar"), alleging breach of contract, various business torts, and violations of Illinois and federal statutes. Defendants filed a three-count counterclaim. Presently before us is Defendants' motion to transfer the case to the Western District of Tennessee pursuant to 28 U.S.C. § 1404(a). For the reasons discussed below, we grant the motion.

## I.     BACKGROUND

Plaintiff Kelco, headquartered in Illinois, processes and sells steel. (Ans. ¶ 3.) In 1995, Kelco contracted with Defendant Morgan for Morgan to sell Kelco's steel products. (*Id*. ¶¶ 5, 12, 14.) The contract included a non-compete agreement. (*Id*. ¶ 14.) Kelco alleges that, in contravention of the non-compete agreement, Morgan used Kelco's employees and assets to divert sales from Kelco to Morgan's own steel company, Defendant Wesmar, breaching their

contract and violating several laws.

Morgan is a resident of Tennessee, and Wesmar is incorporated in Tennessee. (*Id.* ¶¶ 4–5.) At the time of the alleged unlawful conduct, Morgan worked out of Kelco's Southeast regional office, located in Tennessee. (*See* Keller Aff. ¶ 9.) Most of Morgan's customers (for Kelco and Wesmar) are located in the Southeast region of the United States. (Morgan Aff. ¶ 5.) Morgan and Wesmar have brought counterclaims against Kelco, alleging breach of contract, promissory estoppel, and tortious interference with prospective economic advantage. In the present motion, Morgan argues that this case should be heard in Tennessee.

II.     ANALYSIS

Pursuant to 28 U.S.C. § 1404(a), a court may, for the convenience of the parties and witnesses and in the interest of justice, transfer any civil matter to another district where venue is proper. A court may transfer a case if the moving party shows that: (1) venue is proper in the district where the action was originally filed; (2) venue would be proper in the transferee district; and (3) the transfer will serve the convenience of the parties and witnesses as well as the interests of justice. *See Morton Grove Pharms., Inc. v. Nat'l Pediculosis Ass'n*, 525 F. Supp. 2d 1039, 1044 (N.D. Ill. 2007). The parties appear to concede that venue would be proper in either the Northern District of Illinois or the Western District of Tennessee, and we agree. Therefore we focus on whether a transfer will serve the convenience of the parties and witnesses and the interests of justice. In doing so, we must weigh both private and public factors, and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 843 (1947)). The weight afforded to each

factor is within the discretion of the district court. *Coffey*, 796 F.2d at 219 ("The weighing of factors for and against the transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge."). "When deciding a motion to transfer venue, the court must accept as true all of the plaintiff's well-pleaded facts in the complaint, unless they are contradicted by affidavits or other appropriate evidence from the defendant." *Bankers Life & Cas. Co. v. Case, et al.*, No. 05 C 6532, 2005 WL 3542523, at *1 (N.D. Ill. Dec. 24, 2005) (quoting *Andrade v. Chase Home Fin., LLC*, No. 04 C 8229, 2005 WL 3436400, at *2 (N.D. Ill. Dec. 12, 2005)).

A.      Private Factors

Relevant private factors for a motion to transfer venue include: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of witnesses." *Morton Grove Pharms.*, 525 F. Supp. 2d at 1044 (citing *Schwartz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 835 (N.D. Ill. 2004)). We discuss each in turn.

1.      Plaintiff's Forum Choice

The plaintiff's forum choice is generally given great deference, particularly when the plaintiff resides in the chosen district. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995); *Dunn v. Soo Line R.R. Co.*, 864 F. Supp. 64, 65 (N.D. Ill. 1994); *FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993). Because Kelco resides in the Northern District of Illinois, its chosen forum, this factor weighs heavily against a transfer.

2.      Situs of Material Events

Defendants argue that the vast majority of the material events allegedly giving rise to

Kelco's claims occurred in Tennessee or in nearby Southern states. These claims revolve around Morgan's steel sales (through Kelco and Wesmar) conducted out of Kelco's Tennessee office, to customers primarily in Tennessee and other Southern states. Therefore, according to Morgan, any alleged contract breach or otherwise unlawful conduct by Morgan occurred in Tennessee or nearby, and not in Illinois.

Kelco responds that Morgan's allegedly unlawful activities were conducted using Kelco's email system, which routes messages through an email server in Illinois, and that any damage to Kelco was felt at its headquarters in Illinois. Therefore, according to Kelco, material events also occurred in Illinois.

While we agree with Kelco that this lawsuit is connected to Illinois, we also agree with Defendants that the primary material events occurred in Tennessee or nearby. Therefore this factor weighs in favor of a transfer.

### 3. Access to Sources of Proof

The third private factor for determining whether to transfer venue is the relative ease of access to sources of proof. Although the parties spend little time discussing this factor,[1] it is likely that written discovery materials and other sources of proof are located in both districts. Specifically, the parties refer in their briefs to possible documentary evidence located both at Defendants' office in Tennessee and on Kelco's email servers in Illinois. Neither party has shown that its favored district clearly contains more proof than the other, and in any case, the referenced documentary evidence located in Tennessee and Illinois is easily transmittable. *See*

---

[1] In discussing access to proof, Defendants argue that key witnesses are located in Tennessee and surrounding states. (Mot. at 4–5.) We address this argument as part of the fifth factor, concerning the convenience of witnesses.

*First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 912 (N.D. Ill. 2006). Thus, this factor is neutral.

### 4. Convenience of Parties

We next consider the relative convenience of each forum for the parties. Defendants argue that because Kelco has greater financial means than do Defendants, Illinois is a more inconvenient forum for Defendants than Tennessee would be for Kelco. Defendants provide no factual support for this claim of inferior resources, and therefore we are unable to assess its veracity. Furthermore, we are unpersuaded by Defendants' bald argument that the burden on Defendants to bring witnesses to Illinois would be substantially different from the burden on Kelco to bring witnesses to Tennessee. When, as in this case, each party suggests that its home forum is most convenient, and the relative inconvenience to each party of litigating outside its home forum is the same, the tie goes to the plaintiff. *In re Nat'l Presto Indus., Inc.*, 347 F.3d at 665. This factor is a tie and thus weighs slightly against a transfer.

### 5. Convenience of Witnesses

For the final private factor, we consider the relative convenience of each forum for potential witnesses. When assessing this factor, we distinguish between party and non-party witnesses. *Morton Grove Pharms.*, 525 F. Supp. 2d at 1045. We assume that each party will be able to compel its employees to testify without issue, regardless of the forum. However, if a proposed witness is not a party to the action, we must consider the court's ability to compel the witness to testify through compulsory process. *First Nat'l Bank*, 447 F. Supp. 2d at 913.

The parties have identified potential witnesses in many states. Aside from employees of each party, potential witnesses include three former employees now living in Tennessee, as well

as customers and suppliers in Tennessee, Michigan, North Carolina, South Carolina, Arkansas, Ohio, Kentucky, Georgia, Alabama, and Mississippi. For non-party witnesses outside Illinois and Tennessee, the Northern District of Illinois and the Western District of Tennessee would face identical compulsory process issues, and each would impose travel hardships on the witnesses. However, for the non-party witnesses in Tennessee, the Western District of Tennessee would have superior access to compulsory process and would be more conveniently located than the Northern District of Illinois. The parties have identified no non-party witnesses in Illinois. Therefore, although the fora are similarly situated with regard to many of the potential witnesses, the non-party witnesses located in Tennessee tilt this factor in favor of a transfer.

B.    Public Factors

Finally, we must add to our balance the interests of justice. *Coffey*, 796 F.2d at 220–21. We consider factors related to the efficient functioning of the courts, including the "court's familiarity with the applicable law, [and] the speed at which the case will proceed to trial . . . ." *First Nat'l Bank*, 447 F. Supp. 2d at 912.

1.    Familiarity with Applicable Law

Illinois law governs Kelco's claims under the Illinois Deceptive Trade Practice Act (Counts IX–X), and federal law governs Kelco's Lanham Act claims and related equity claims (Counts V–VIII). For the remaining common law claims and counterclaims, we must apply choice of law principles to determine what state's law will govern.

Federal courts apply the choice of law rules of the state in which they sit, and accordingly we apply Illinois' choice of law rules. Illinois follows the Restatement (Second) of Conflicts of

-6-

Law for both tort and contract claims. *See Townsend v. Sears, Roebuck & Co.*, 227 Ill.2d 147, 157, 879 N.E.2d 893, 899 (2007); *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill.2d 45, 879 N.E.2d 910, 912 (2007); *see also* Restatement (Second) of Conflicts of Law (1971) [hereinafter Restatement]. The Restatement contains several layers of guidance for choice of law questions. First, Section 6 lays out several general principles to guide choice of law inquiries. The principles of Section 6 alone are not especially practical,[2] and so Sections 145 and 188 list more concrete factors to be balanced for tort and contract claims, respectively. Finally, certain Restatement sections list individualized presumptive rules for certain types of tort or contract claims. In *Townsend*, the Illinois Supreme Court described the operation of these various provisions:

> [T]he Second Restatement contemplates a two-step process in which the court (1) chooses a presumptively applicable law under the appropriate jurisdiction-selecting rule, and (2) tests this choice against the principles of § 6 in light of relevant contacts identified by general provisions like § 145 (torts) and § 188 (contracts).

*Townsend*, 227 Ill.2d at 164, 879 N.E.2d at 903 (quoting Crampton, Conflict of Laws: Cases-Comments-Questions 120). Thus for each claim we must identify and apply the applicable

---

[2] Section 6(2) states:

[T]he factors relevant to the choice of the applicable rule of law include

    (a) the needs of the interstate and international systems,
    (b) the relevant policies of the forum,
    © the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
    (d) the protection of justified expectations,
    (e) the basic policies underlying the particular field of law,
    (f) certainty, predictability and uniformity of result, and
    (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflicts of Law § 6(2).

presumptive rule, if one exists, and then test the resulting presumption against the factors in Section 145 or 188. If no applicable presumptive rule exists, we simply balance the Section 145 or 188 factors. We conduct this two-step analysis separately for the various claims.

a.  *Contract Claims: Most Significant Contacts*

This case contains three claims sounding in contract: Kelco's breach of contract claim (Count I) and Defendants' breach of contract and promissory estoppel counterclaims (Counts I–II). To begin our two-step analysis for these claims, we must determine what type of contract is at issue and, consequently, if the Restatement contains an applicable presumptive choice of law rule. Under the contract at issue, Morgan agreed to sell steel on Kelco's behalf and Kelco agreed to pay Morgan for this service. (Am. Compl. ¶ 4.) The Restatement sets out a presumptive rule that actions arising from service contracts are governed by the law of the state in which all or a major portion of the services were to be performed. Restatement § 196. Here, although Morgan sold steel to customers in several states, he appears to have made these sales from Kelco's Tennessee office, (*see* Am. Compl. ¶¶ 13, 23), and thus we can fairly say that Morgan performed all or most of his contractual duties in Tennessee. Consequently, the presumptive rule under the Restatement favors Tennessee law.

This conclusion does not end our inquiry. Next, we must test this result against the Restatement's factors for all contract claims to see if another state has more significant contacts to the contract than does Tennessee. To do this, we weigh the factors set out in Section 188, namely:

(a) the place of contracting,
(b) the place of negotiation of the contract,
© the place of performance,
(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Restatement § 188(2).  The parties vehemently dispute the place of contracting and negotiation, filing affidavits that go so far as to accuse one another of lying.  (*Compare* Morgan Aff. ¶ 4 *with* Keller Aff. ¶¶ 11–22.)  However, the place of contracting is by nature a relatively insignificant factor.  *See* Restatement § 188 cmt. e.  Furthermore, it appears that at least the initial stages of negotiations were conducted across state lines via telephone, (*see* Keller Aff. ¶ 16), and in such circumstances the place of negotiation is also relatively insignificant, *see* Restatement §188 cmt. e.  Accordingly, we will disregard these hotly contested but largely immaterial factors.  The primary place of performance, as stated above, was Tennessee.  The subject matter of the contract was the services performed by Morgan in Tennessee.  Finally, Kelco is domiciled in Illinois, with Kelco and Morgan in Tennessee.  Weighing these factors, we find that the presumptive rule favoring the place of performance is vindicated, and accordingly Tennessee law controls the various contract claims.

### b.    Tort Claims: Most Significant Relationship

For choice of law purposes, this case contains four claims sounding in tort: Kelco's tortious interference with prospective advantage, tortious interference with contract, and breach of fiduciary duties[3] claims and Defendants' tortious interference with prospective advantage claim.  As with contract claims, for each tort claim we must first determine if the Restatement provides a presumptive choice of law rule.  If a presumptive rule exists, we apply the rule and test the result against the factors outlined in § 145, the general provision for torts, to see if

---

[3] Illinois applies tort choice of law rules for a breach of fiduciary duties claim.  *See Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 340–41 (N.D. Ill. 1997).

another state has a more significant relationship to the claim than does the state identified by the presumptive rule. If a presumptive rule does not exist for a particular claim, we balance the factors in § 145 to determine which state has the most significant relationship to that claim. *See Townsend*, 227 Ill.2d at 164, 879 N.E.2d at 903 (quoted above).

The Restatement provides only one presumptive rule applicable in this case: in cases involving injurious falsehoods disseminated to multiple states including the plaintiff's home state, the law of the plaintiff's home state governs. Restatement §§ 149–151. The gist of Defendants' tortious interference counterclaim is that Kelco made false statements about Defendants to Defendants' customers, interfering with Defendants' business relationships and causing injury. (Countercl. ¶¶ 51–52.) These allegedly false statements seemingly were made to several customers in multiple states, including Defendants' home state of Tennessee. (*See* Countercl. ¶ 31; Morgan Aff. ¶ 6.) Thus Tennessee law presumptively governs Defendants' tortious interference counterclaim.

We now test this presumption by balancing the choice of law factors listed in Section 145 to see if another state has a more significant relationship to the counterclaim. The Section 145 factors are:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> © the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> © the place where the relationship, if any, between the parties is centered.

Restatement § 145(2). For Defendants' tortious interference counterclaim, Defendants felt any injury in Tennessee, where they reside, and Kelco's conduct causing any injury occurred in Illinois, where it is located. The domiciles of the parties are split between Tennessee and

Illinois. The determining factor in the balance, therefore, is the place of the center of the relationship between the parties. Kelco entered into its relationship with Morgan in order to sell its steel products to customers in Southern states. To further this purpose, Kelco created a regional office in Tennessee, paid Morgan to coordinate sales to Southern customers from that office, and sent staff to Tennessee to assist Morgan. (Am. Compl. ¶¶ 12–13, 23.) Although not all customers to whom Morgan made sales were located in Tennessee, (Morgan Aff. ¶ 5), and part of the relationship between Morgan and Kelco touched Kelco's headquarters in Illinois, (Am. Compl. ¶¶ 16–17), we find that the center of the relationship between Morgan and Kelco was in Tennessee. Thus the factor balance favors Tennessee, confirming the outcome of the presumptive rule. Accordingly, the law of Tennessee governs Defendants' tortious interference with prospective economic advantage counterclaim.

Kelco also alleges tortious interference with prospective economic advantage, however Kelco's claim is different in nature than Defendants' claim because it does not allege an injurious falsehood. Thus, although Kelco's claim bears the same title as Defendants' claim, it is not subject to the same presumptive rule. Instead, because the Restatement contains no presumptive rule applicable to Kelco's tortious interference with prospective economic advantage claim—nor one applicable to its tortious interference with contract or breach of fiduciary duties claims—our remaining choice of law analysis solely involves balancing the factors of Section 145.

For all of Kelco's tort claims, the place of injury is at Kelco's headquarters in Illinois and the alleged tortious conduct by Morgan occurred primarily in Tennessee, from Kelco's regional office there. Kelco argues that, because Morgan used his Kelco email account to perpetrate the

alleged torts—emails which were routed through Kelco's email servers in Illinois—Morgan's tortious conduct also occurred in Illinois. While it may be true that Morgan's alleged tortious conduct touched Illinois, it is clear that such conduct occurred primarily in Tennessee, the place from which Defendants made the sales that give rise to Kelco's claims. As with Defendants' counterclaim, the domiciles of the parties are split between Tennessee and Illinois and the center of the parties relationship is in Tennessee. Balancing these factors, we find that Tennessee has a more significant relationship with Kelco's tort claims than does Illinois, and accordingly the law of Tennessee governs these claims.

c.        Summary of Applicable law

In sum, federal law governs four of Kelco's claims (Counts V–VIII), Illinois law governs two of Kelco's claims (Counts IX–X), and Tennessee law governs four of Kelco's claims (Counts I–IV) and all three of Defendants' counterclaims. The Northern District of Illinois is more familiar with Illinois law than the Western District of Tennessee, vice versa for Tennessee law. Because Tennessee law governs seven of the nine state law claims, including the breach of contract claims at the center of the dispute, this factor weighs in favor of a transfer.

2.        Speedy Case Resolution

According to the 2008 Federal Court Management Statistics, *available at* http://www.uscourts.gov/cgi-bin/cmsd2008.plan, an average civil case is resolved nearly twice as fast in the Northern District of Illinois (average of 6.2 months) as compared to the Western District of Tennessee (average of 11.8 months), and the time to trial for civil cases in each court is roughly equivalent (27.5 months versus 26.4 months). These statistics suggest that the parties might receive a speedier resolution of their case in the Northern District of Illinois, weighing

slightly against a transfer.

        C.      Summary of Balance

The situs of material events occurred in Tennessee, potential non-party witnesses are located in Tennessee, and the law of Tennessee governs the majority of claims in the lawsuit. Although Plaintiffs will be inconvenienced by litigating this case outside their chosen forum and statistics show that the case might proceed slightly slower in Tennessee, the balance of factors weighs heavily in favor of a transfer.

III.     CONCLUSION

Accordingly, for the reasons stated above, we grant Defendants' motion to transfer venue.  This case is transferred to the Western District of Tennessee.  It is so ordered.

 

_____
MARVIN E. ASPEN
United States District Judge

Dated: April 5, 2010